The next case for amendment is Charter Advanced Services v. Nancy Lange. Mr. Tweeten. Andrew Tweeten Good morning, and may it please the court. Andrew Tweeten, Assistant Attorney General, on behalf of the appellants, the commissioners of the Minnesota Public Utilities Commission. The Telecommunications Act of 1996 expressly authorizes state jurisdiction over intrastate services like Charter Phone. Charter Phone is a fixed, interconnected voice-over IP phone service. Decisions of the FCC and this court say that VoIP providers who can determine the interstate or intrastate jurisdiction of customers' calls would be subject to state jurisdiction. The court should reverse the district court's decision because... That's correct, Your Honor, but... As I said, Your Honor, the Vonage 3 decision restates the FCC's statement from the USF order, which indicates that in the event a fixed, interconnected VoIP provider is capable of determining the jurisdiction of customers' calls, that is, is able to determine whether calls are interstate or intrastate, that state jurisdiction is preserved in that instance. And this court reiterated that. It did not decide the issue in Vonage 3. Certainly, that's not the Vonage 3 court's holding. But that statement is due certain deference from this court, I think, and should certainly give this court pause as it reviews the district court's decision, which departs from that statement, the FCC's statement, and this court's statement in Vonage 3, and instead says that state jurisdiction is preempted. The PUC properly exercised jurisdiction over Charter Phone consistent with the principles of the Telecommunications Act and consistent with FCC and Eighth Circuit authority. The Minnesota PUC is not preempted from exercising jurisdiction over fixed, interconnected VoIP. The only fact material... If it's not telecommunications service, what's the basis for state regulation, common carrier regulation? The question before this court is a question about preemption, and the law on that point, in the commission's view, is settled. The FCC has said in the USF order and this court in Vonage 3 that state authority would not be preempted when traffic is capable of being jurisdictionalized. That's the FCC's position today. Well, that's the FCC's counsel's position. That's the position that I care the most about. I mean, I can study the other orders, but when the FCC says the other orders don't do what the parties are saying they did, they are more broadly stated, and they should not be read the way either party's reading them. I take that as, if not a marching order, at least strong guidance under our role as a part of federal administrative law. So when the FCC says... The FCC describes the basis of state regulatory jurisdiction under the Telecommunications Act as being governed by whether it's common carrier service. And if you have Supreme Court authority to the contrary, I'd like to know that, because it seems to me that, if true, makes the question whether this is information service or not far less significant. I don't have Supreme Court authority to the contrary, Your Honor, but the FCC's brief is puzzling because it stakes out a position contrary to decades of agency precedent. As we state in our brief, and if you look to the case we cite, the Bowen decision, it's not due deference in this case because it's simply a litigating position that the agency has taken. It's not a decision that was promulgated as a rulemaking or a decision in an agency adjudication to which formal agency deferences do something like Chevron deference or something like that. Moreover, it's not even persuasive because it's contrary to the decisions that the decision makers, who Congress has delegated authority to, it's contrary to those decisions that those decision makers have made. And respectfully, your role in this, in the federal system, is to look to the decisions that those decision makers have made, not the statements that agency counsel has made in a brief. And that's laid out pretty clearly in the Bowen decision and also in the Camp decision that we cite. If I take a position on this dispute, it's a background discussion, which includes a citation to a provision in the Telecommunications Act that seems to expressly limit the common carrier regulation authority of state regulators. That's a basis for federal preemption. Because if this is not telecommunications services, it seems to me the briefs are very unclear as to the basis of federal regulation if it's not telecommunications services, but perhaps not information services. I would refer, your Honor, to Section 152B of the Act, which clearly states that the FCC's authority is constrained to interstate services and expressly reserves state authority as to intrastate services. It's undisputed on the record here today that Charterphone is capable of determining the jurisdiction of customers' calls. That's clear from the record. No one disputes that. And in fact, it's clear from the record that the vast majority of calls made on Charterphone's network are intrastate. They take place entirely within the state of Minnesota where the assertion of jurisdiction takes place. And so under Section 152B, the FCC's authority extends only to regulate the interstate portions of that service, and the state's authority is reserved as to the intrastate portion. Now, if that much isn't clear from the text of the Act, I would also refer the Court to the statutory note that Congress passed or included with the Act when the Act was passed in 1996, which plainly indicates that state authority is reserved and that there's to be no implied preemption of state authority. There's a statutory note that's cited in our brief. I believe it's cited in both the blue brief and the gray brief that Congress included with the 1996 Act, which states congressional intent, in essence, that state authority shall not be preempted, that there shall not be implied preemption of state authority. So that's an additional reason why state authority is proper in this case and why the District Court's decision should be reversed. I don't have other points to make other than to refer you to the preemption question and to this Court's decisions that are relevant to that. And the Vonage III case is the first of those. And the second is the Lozier decision. And I'll bring you to that because I think it encapsulates the approach question that I think Judge Loken is asking. The Lozier decision concerned a claim that a state tariff was preempted under the Telecommunications Act. And Judge Jarvie in Iowa decided that he didn't need to reach the question of classification in order to determine that state jurisdiction was preserved. And just last year, this Court affirmed that decision. And reading between the lines, I think it's clear that it's not a requirement to classify a certain product, but rather this Court's jurisprudence holds that state jurisdiction is preserved and a court need not go to great lengths like the District Court did in this case and reach a question that even the FCC has not resolved in order to preempt state jurisdiction. It's clear based on that decision, on the FCC's statements in the USF order, and this Court's echoing that statement in Vonage III that state authority is not preempted. Counsel, there was an issue that the District Court did not reach on summary judgment. Even if spectrum voice meets the definition of telecommunications, don't we still need to remand this case to consider the add-on services that Charter offers under the inextricably intertwined test to see the impact of those additional services on the classification? Respectfully, Your Honor, I think if this Court reaches the classification question, the first place that the Court should turn is the definitions of the Act. And the definitions under the Act state that, well, first of all, it's plainly settled law that interconnected VOIP is telecommunications. The question is whether it's a telecommunications service. And that turns on whether this service is offered to the public for a fee. And on this record, it's plain that Charter phone is offered to the public for a fee. So our definitional argument, which the District Court glosses over, and which the Supreme Court in Brand X says is the first place you turn in these debates, should be the framework of analysis. Does it make any difference if it's never offered as a stand-alone service? It does not, Your Honor. The question is whether there's an offering of a transparent telecommunications path. And plainly there is here. Charter's 30B6 deponent and the marketing materials, which are part of the record, all plainly indicate that this is a service that offers a transparent telecommunications path to consumers. It talks about how you can make incomplete calls. You can talk all you want. It's plainly an offering of telecommunications. So their argument that it's always part of a package is a red herring. Absolutely, Your Honor. And if you look to, I'll give you a couple of authorities on that. The first is, I believe, the Federal-State Joint Board on Universal Service Order, which is cited in our gray brief. It indicates that a provider's decision to bundle or package a product in a certain manner doesn't affect its classification. If you look to, I think that's also echoed in another decision that's cited in the blue brief. So there's plenty of FCC authority out there that supports our position, supports the Commission's assertion of jurisdiction over this telecommunications service, because it need not be, the court need not turn to this sort of inextricably intertwined analysis that Judge Graz cites, because the question really is whether this is offered or not, whether there is an offering of this transparent telecommunications path. And plainly there is. To hold otherwise, as the district court did, would imply that the FCC was incorrect to say that interconnected VOIP is telecommunications, and it would also imply that this court got the decision in loger wrong, that the state should have been preempted because it was an information service. So, yes, you definitely, I think, look to the FCC's authorities on those points, and it's clear that bundling or packaging, those sorts of decisions, aren't determinative of classification. Really what you're looking to is whether there is an offering of a telecommunications service to consumers. And the marketing and Charter's own 30B6 component on that is plainly clear, that it's an offering of a voice transmission service to a real-time telecommunications path. Does the transformation of the data in process make a difference? No, Your Honor. The transformation that Charter alleges happens, first of all, it's undisputed in the record that those sorts of transformations are ubiquitous in telephony, and to assign legal significance to that sort of protocol conversion is really a red herring again. And if you look to Charter's own authority on this point, the non-accounting safeguards order, the service here falls within exceptions to that order, the first of which is the internetworking exception. This is plainly a question about internetworking, where we have two disparate networks talking to each other. As a result, it's accepted from treatment as an information service. That protocol conversion doesn't affect the classification. So to your point, Your Honor, no, the protocol conversion here is not determinative. And even if it were, if that were the rule, if you universalize that rule, you essentially eviscerate the definition of telecommunication service from the Act, because those conversions, it's undisputed, take place in all kinds of different contexts in telecommunications. Thank you. I see my time is running. I'll reserve the balance for a while. Thank you. Mr. Gershengorn. Thank you, Your Honor. May it please the Court, Ian Gershengorn on behalf of Charter Advanced Services. The Minnesota PUC seeks to impose here on Charter's interconnected voice service a broad range of public utility regulations that no other state in the country currently imposes. The FCC's brief, which Judge Loken referenced, has made clear the stakes of this case. Minnesota's effort threatens to throw the national voice services market, in the FCC's words, into disarray by creating a patchwork of separate and potentially conflicting requirements for VOIP service, and it threatens to stifle competition and innovation in emerging VOIP technology. Fortunately, as the District Court correctly held, the existing statutory and regulatory framework precludes that result. Charter's VOIP service offers its customers the ability to connect over broadband with the tens of millions of users who access the phone through the public switch telephone network, and it enables its customers to get advanced services that they use every day. It does that, Judge Erickson, by combining a net protocol processing function along with a basic transmission function. In the words of the statute, it is an offering of the capability for processing and transforming information via telecommunications. Under the FCC's longstanding approach, which the Supreme Court affirmed in Brand X, that makes it an information service and not a telecommunications service, and therefore Minnesota's effort to impose these burdensome public utility regulations are preempted. Now, Mr. Tweeten this morning started out with the idea that this Court has already decided, or that the FCC has already decided, that there is no preemption, that the USF order decided that. That is not correct. The Vonage III order that Judge Loken referenced in the last paragraph addressed this point expressly. Remember, in that case, although it was not the main argument, the New York Public Utility Commission argued that its regulation of fixed VOIP service, what we're talking about here, was preempted. And what this Court said on page 583, it cited to the Universal Service Order at paragraph 56, and it said as a result of that order, the NYPSC's contention that state regulation of fixed VOIP services should not be preempted, remains an open issue. So this Court did not decide that in the Vonage case. With respect to Judge Loken, you asked a number of questions, and I think it's important to understand the basic framework here. The statute defines information services as the offering of a capability for processing or transforming information via telecommunications. That is what this service does. It does it through the network, it does it through the net protocol conversion, and it combines that with telecommunications. Counsel, I agree we start with the statute. This is a very complicated area, but we do start with the words of the statute. The definition of telecommunications services says regardless of the facilities used. So why doesn't this Spectrum Voice service clearly fall under that definition? It doesn't, Your Honor, because it is not, earlier in the statute, it is not offering telecommunications for a fee directly to the public. In deciding that question, the Supreme Court in Brand X affirmed the FCC's basic approach, which is articulated over and over, including at page 42 of our brief in the CALEA decision, that when a provider combines both a processing function, like the net protocol conversion, along with a telecommunications function, the basic transmission, in an integrated functional offering, that's an information service, and it is not a telecommunications service. So the key language, Your Honor, is not regardless of the facilities used, but rather the offering of the telecommunications. What the FCC has done and what the Supreme Court affirmed in Brand X was the FCC's interpretation, was that offering looks to what is the standalone product. Here it is a functionally integrated product. How do we know that? Well, as Judge Erickson's question got to, from the provider side, from our side, we have integrated, this is not a situation, we agree, that you can't just slap a voicemail function on a phone and say, well, we've integrated it or we've bundled it. But that's not what this is. From our side of it, we have, it is a unified offering where we give network, net protocol conversion, along with telecommunications. Remember, the statute defines an information service as information via telecommunications. So telecommunications is a part of an information service. So that's the first part of the answer. But independently, and reinforcing that, the customer gets a functionally integrated product. So what the customer gets, among other things, is A, the ability to connect to users across the country, tens of millions of users who use the public switch telephone network. That is possible only because of the net protocol conversion function. And it gets access to the advanced features, advanced features like robocall blocking, advanced features like being able to get text of what your voicemail said, the ability to see call or ID on your television. All of these advanced features are available because of this net processing function. So whether one looks at it from the provider's perspective or the customer's perspective, what there is is a functionally integrated offering. And to be clear. From the customer's perspective, how is there any change in this information as sent and received? So, Your Honor, the question isn't is there change. The question isn't whether the customer perceives a change in the information. Because, of course, the customer couldn't care less, quite frankly, about what happens on Charter's network. What the customer cares about is the functionality that he or she receives. And that functionality, which is very much at the core of what the customer is getting, it is the ability. What Charter offers is not the ability to talk to other Charter customers, which is something, for example, like WhatsApp or things of that nature where you have a closed network. What Charter offers is the interconnected piece of VoIP, right, that you're able to talk to customers across the country who use the public switch telephone network. And it offers the suite of advanced features that are enabled because of this net protocol conversion. So the customer is very much aware of the functionality that he or she receives. Even if the customer isn't aware of, well, does it go from IP to TDM, of course the customer doesn't know that, but that's not the test. The test is whether they receive that functionality. And so I think it's very important that the court understand that basic framework. And it's on page 42 of our brief in the CALEA order. And what it says is a single entity offering an integrated service combining basic telecommunications transmission with certain enhancements, specifically, and then quotes the statute, which includes network protocol, net protocol conversion, offers only an information service and not a telecommunications service for purposes of the Communications Act if the telecommunications and information services are sufficiently intertwined. That's the test. That's what you have to decide. Judge Grasso, if I can. Yes, you can. And so I think this is very important, Judge Grasso. I'm glad you mentioned it because I wanted to come back to your question. The answer to your question to Mr. Tweeten is no. You do not need to remand for the consideration of whether all of these advanced features are functionally intertwined. There were two independent bases for us to prevail. The district court ruled for us on one and decided not to reach the other. So if you were to rule against us, of course, you'd have to remand for consideration of the second. But just to be clear what the two differences are. The first one is whether the net protocol conversion is functionally intertwined with the transmission capability. The answer to that is yes. That is what the district court held. That is an independent and sufficient ground for us to prevail. The issue that the district court did not reach is whether features such as voicemail and call blocking and other things like that are also sufficiently intertwined that that would be an independent basis, that those information kind of services, those advanced features are sufficiently intertwined that we would win even if the court didn't believe that the net protocol conversion and transmission were intertwined. So I just want to be clear. The answer to your question is, Your Honor, you would only remand for the court to reach the second issue if we lose the appeal today. But you can affirm the district court judgment and you should affirm the district court judgment based on what the district court decided. Now there was some, I think it's important, Your Honor, not just to look at the statute but to look at the policies and this I think goes to Judge Loken who waived the FCC brief. The FCC brief has told you what the policy, where the policy lies. Now Mr. Tweetin suggested that they don't get deference to that. I don't think that's correct. They get our deference. I mean what bothers me is you're saying affirm the district court and the FCC says you don't have to do that and you shouldn't. I don't read the FCC to have said that at all, Your Honor. You shouldn't decide the classification question. So I don't read the FCC to have done that, Your Honor. Of course the brief says what it says but here's how I read it. I read the FCC to have not taken a position on the question that the district court decided but that the FCC weighed in to explain a number of very important things which I think get you a long way to affirming the district court. First, the FCC made clear that the policy justifications are strongly in charter's favor and in the district court's favor. The FCC said it has long had a national policy of uniform and light touch regulation and that the imposition of 50 different state PUC regulations would create a patchwork which would interfere with competition, stifle innovation, and prevent the growth of these advanced services. Just bear with me a minute because what bothered me, a question I had at the end of the FCC's brief, is if we decide that their recommended prudence is sound and we do not decide the classification issue one way or another, what is the basis for federal preemption? So Your Honor, I read the FCC's brief a little different than I think Your Honor did. I'm familiar with regulation, not with this technology. I'm familiar with federal preemption in all different kinds of environments. And what I wasn't clear about at the end of the FCC's brief, I think I understood what they were urging us to beware of. And that left me with the question, okay, if I'm beware of the classification issue, the FCC obviously doesn't favor the state regulation being urged by appellants. It has to be federally preempted or they do what they do under our system. So what's the basis for preemption? So Your Honor, I think what the FCC has done is said there are very strong policy justifications that favor preemption, that the state PUC's reading of the FCC orders are incorrect. Are you going to dock me? No, I'm not. I'm going to answer you directly, Your Honor. I think the answer to the question is 47 U.S.C. 153 sub 51, which says that companies shall be treated as a common carrier only to the extent that it is engaged in providing telecommunication services, which is what the commission's brief quotes. As I've mentioned, these are not telecommunication services, and therefore it is not permissible. Where does, what's the basis for Congress, what's the U.S. constitutional basis for Congress dictating to the states who they can and cannot regulate as common carriers? So, Your Honor, I think that is the Telecom Act, and it's no different than the Federal Power Act. I mean, those acts may divide communications into intrastate and interstate components, and the Supreme Court has never had a problem with that sort of preemption of things that have an impact on interstate commerce, as the FCC suggests that this brief will. And so I do think that it's very much, that section of the Communications Act has been... I hear you saying as long as it's truly intrastate, it's not preempted. So, Your Honor, the FCC's preemption has gone beyond purely intrastate matters to things that also affect interstate matters. But I think, stepping back, Your Honor, I think the FCC has not taken a bottom-line position on preemption or on the statute. No, I think it's more matters than I am the agency. So, Your Honor, I think that this court in the Vonage case affirmed, as the FCC held in the Vonage case, the Vonage 2, the FCC held that the regulation of information services was preempted to the extent the state tried to impose common carrier regulations. This court affirmed that on page 580 of the decision as a reasonable judgment. So this court has already weighed in on that question about whether the FCC has authority to preempt. But the question I... As I look at that brief, I guess I have a question, whether you take it that the FCC was trying to assert that we should look specifically to the facts to cabin this question on the facts presented in this case as opposed to any categorical decision, which I may have misread it, but which I did not take as an invitation not to reach the question of whether it's a telecommunication service or an information service. I read it exactly the way you do, Judge Erickson, and that's what I was trying to convey. I don't think the FCC has said... The FCC hasn't taken a position, but the FCC has given this court the authority... what it needs to decide on the basis of these facts that this is... that is preempted because on these facts this is an information service and not a telecommunication service, and thus those regs are preempted. And what the commission has said to the court is that the kinds of policy concerns that the PUC has raised shouldn't bother the court, that the FCC itself regulates to protect consumers, that in fact the danger is having 50 different sets of regulations in place, that in fact even state regulation isn't entirely preempted, that generally applicable consumer protections are in place, and that indeed this is how you create parity among competitors. We compete, the 40 to 45 percent of the market is wireless, which is not subject to this kind of common carrier regulation. The nomadic voice, which is another chunk of the market, is not subject to this regulation. And what the FCC has said is this is the way to continue the light-touch regulatory uniform national framework that has allowed VoIP services to thrive. So, Your Honor, Judge Erickson, I think you're exactly right. What the FCC has given has not said don't reach this. In fact, what the FCC has said is you need to decide. We, the FCC, are not going to decide. But here is the policy justification that you need. Here is an understanding of our orders, which I think is very much like what's described in our brief but not in the state PUC's brief, that the non-accounting safeguards order remains good law, that the USF order did not decide the preemption question, and that the basic regulatory framework remains in place. And so I think that's what the Commission has said, and that's all this Court needs to affirm the District Court's decision. It needs to go one step further than what the FCC has said. It actually needs to decide on these facts, not across the world, not forever, but on these facts at this time, whether this is a telecommunication service or an information service. And for the reasons I said, I think it is clearly an information service. Now, I know my time is short, so with the Court's leave, I'd love to touch briefly on the telecommunications management exception that Mr. Tweeten raised. But I defer to the Court as to how to use my time. I see I've used it. Well, your time is up. I mean, it's all in the brief somewhere. Okay. So thank you, Your Honor. We ask you to affirm the District Court. I'll give you three minutes. Okay. Thank you, Your Honor. First of all, if the concern truly is regulatory parity, then Charter's framework should be rejected here. The FCC has observed on a number of occasions that fixed interconnected VOIP is viewed by consumers as a substitute for plain old telephone service. And carving out interconnected VOIP from state regulation would make an unequal playing field and would accept those carriers from state regulation where others are subject to state regulation, are properly subject to jurisdiction under the Act. Now, to Mr. Gershengorn's point about consumers not caring about what network functions happen, that's precisely the Commission's argument here as to classification. That's absolutely correct, that Charter Phone does not offer protocol conversion to consumers. Charter Phone offers telephone service to consumers. And that's the critical distinction as far as what is offered here. Nothing in the record indicates that Charter offers protocol conversion. Well, what about the argument that there are certain things that have to have happened? There has to be a protocol conversion in order for other services actually to be available. The things like taking that voice and sending an e-mail, sending digital imaging, those sorts of things. Well, first of all, those are not things to which the Commission has asserted jurisdiction, first of all. If you look to the appendix and review the Commission's order, you'll find it's clear that the Commission is asserting jurisdiction over the telephone service, purely, period. But secondly, I'll refer you again to the authorities on bundling at page 35 of our blue brief. Bundling seems to me a different thing. Bundling is sort of like, you know, I'm going to get my video service and bundle that stuff together, as opposed to, okay, I've transformed this piece of data. This data now is capable of doing things other than just transmitting voice. This data, once in a transformed state, is capable to be moved in different directions doing different things. It can send a video. It can send a text message. It can receive a text message. And that doesn't seem to be bundling. That seems to be something else, because it's really talking about what is the data capable of becoming once it's in this format. Then, Your Honor, I'd refer you to the adjunct to basic authorities that we cite in the gray brief. Those are fairly clear as well, that these add-ons the Charter has packaged with the telephone service are simply adjuncts to the telephone service. And under the FCC's jurisprudence, those are accepted from regulation and accepted from, are not, don't transform the service into something that falls outside the federal scheme that's set up under the Act. Looking back on the case, Your Honor, there's no need to resolve the classification question. Out of the first instance, the FCC has been clear on this point, that state authorities have jurisdiction to regulate intrastate services. And the vast majority of the traffic on this service is intrastate. The Commission properly exercised jurisdiction. We encourage you to reverse the district court's decision. Thank you. Thank you. Thank you, Counsel. This case is obviously important and complex. It's been fairly briefed and argued, and we appreciate your help this morning. We'll take it under advisement.